# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| LENN A. IVY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13-cv-01283-JAR |
| | ) | |
| JAY CASSADY, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Lenn A. Ivy's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 4). The Government has responded (Doc. 17), and Petitioner has filed a reply (Doc. 20). For the following reasons, Petitioner's section 2254 petition is **DENIED** and this action is **DISMISSED with prejudice.**

### I. Introduction and Background

On April 14, 2010, a jury found Petitioner guilty of one count each of second-degree murder and armed criminal action (Doc. 4; Resp. Ex. B at 175-78). On April 14, 2010, Petitioner filed a motion for judgment of acquittal notwithstanding the jury's verdict, or in the alternative, motion for a new trial (Resp. Ex. B at 176-78). The trial court denied the motion, and on May 28, 2010, sentenced Petitioner to life in prison on the second-degree murder count, and fifty years in prison on the armed criminal action count, both sentences to be served concurrently (Id. at 176-83). Both counts arose out of the shooting death of Bruce McCaleb.

Petitioner filed a direct appeal, raising one point of error: that the trial court erred by overruling his challenge to the prosecutor's peremptory strike of an African-American venireperson in violation of Batson v. Kentucky, 476 U.S. 79 (1986) (Resp. Ex. C at 1-32). The

Missouri Court of Appeals, finding no error of law, affirmed the trial court's judgment (Resp. Ex. E). The Court of Appeals summarized Petitioner's Batson challenge as follows:

> [Petitioner] raised his Batson challenge as to two peremptory strikes made by the State, identifying these venirepersons and [Petitioner] as African-Americans. The trial court made a complete record as to the proceedings. The State proffered its race-neutral explanations for each individual. The trial court conducted a further inquiry as to [Venireperson 1]'s ability to sit as a juror in light of an apparent disability. The State, being satisfied of [Venireperson 1]'s ability to serve, withdrew its strike against him and struck another young, Caucasian, female venireperson instead. Additionally the State prof[f]ered its race-neutral reason for striking [Venireperson 2]. The State explained that it believed younger people are more liberal and less likely to return a guilty verdict. The age of a venire person is considered a race-neutral factor that may be considered when making peremptory strikes.
>
> After the State proffered its race-neutral reasons for striking [Venireperson 2], [Petitioner] identified two similarly situated Caucasian venirepersons who were not struck by the State. However, one of the identified venirepersons was struck by the State for the same youthful reasons after the State withdrew its challenge of [Venireperson 1]. The State responded that it would be unable to strike every young person within a venirepanel.

(Id. at 6-7).

On August 22, 2011, Petitioner filed a pro se motion to vacate, set aside, or correct the judgment or sentence (Resp. Ex. F at 5-34). In his pro se motion, Petitioner raised nineteen grounds for relief, including, as relevant, each of the claims he now raises in his § 2254 petition. Counsel was appointed for Petitioner (id. at 35), and counsel filed an amended motion to vacate, set aside or correct judgment or sentence and a request for an evidentiary hearing pursuant to Missouri Supreme Court Rule 29.15, asserting two claims:

(1) Trial counsel was ineffective by failing to interview, endorse, and call as witnesses Ms. Rosie Sims, Ms. Tasha Holder, and Mr. Lenn A. Ivey, Sr. (collectively, "alibi witnesses"), all of whom were willing and available to testify that Petitioner was in Indiana when McCaleb was shot.

(2) Trial counsel was ineffective by eliciting, and failing to object to, testimony that Petitioner had remained silent after he was warned that he had the right to do so.[1]

(id. at 39-56). On December 1, 2011, the motion court denied Petitioner's motion without an evidentiary hearing (Id. at 57-63). The motion court summarized the facts of Petitioner's case as follows:

> The evidence at [Petitioner's] trial was that Charles Robinson, his father Bruce McCaleb and Takaila went to the Schnucks parking lot at Natural Bridge and Union on October 9, 2008 to meet someone known as CJ (Robert Saunders) and purchase crack cocaine. Takaila, who was a friend of Robinson's, went into a Foot Locker store and then returned to the car. Mr. Robinson's father got out of the car and walked across the parking lot to talk to a young lady. Another vehicle pulled in and parked next to their car, a person got out of the car and the person said something to Mr. Robinson. Mr. Robinson and [Petitioner] walked to the rear of the car. Bruce McCaleb looked at the drugs [Petitioner] had, and McCaleb said he did not want the drugs. [Petitioner] put a gun to McCaleb's head and said "give it up." Takaila got out of the car and went to the trunk to get a purse which she brought back to the car. [McCaleb] said to [Petitioner], "if you was gonna kill me, kill me." [Petitioner] shot [McCaleb] in the head, and Takaila and Robinson ran off. [Petitioner] pointed the gun at Robinson, the gun jammed, and [Petitioner] then went through [McCaleb's] pockets. These events were testified to by both Charles Robinson and Takaila, and the jury was shown a surveillance video.
>
> Robert Saunders testified at the trial that he went to the Schnucks parking lot with [Petitioner], his daughter and his girlfriend Tamika.[2] He said they had gone to the parking lot to make a drug transaction. After they arrived, [Petitioner] got out and went to meet Robinson. [Petitioner] got into the car that [Robinson], [McCaleb] and Takaila were in, Saunders heard shots fired, and Saunders sped away. He later called the police because he did not want to be involved with what happened in the parking lot.
>
> Tamika also testified at the trial. She knew [Petitioner] because [Petitioner] was a friend of her boyfriend[, Saunders]. She stated that [Petitioner] got out of their car, got into the car next to theirs and she heard a gunshot.
>
> Detective Scott Sailor testified at the trial that [Petitioner] made a voluntary statement after he was arrested several months later in Indianapolis, that if the officers had seen the surveillance video "you should have seen the fight inside the car" and that [Petitioner] thereby placed himself at the scene.

---

[1] Petitioner does not raise this ground in his § 2254 petition.
[2] Takaila and Tamika are sisters.

(Id. at 58-59).

On November 20, 2012, the Missouri Court of Appeals affirmed the motion court's denial of post-conviction of relief (Resp. Ex. I). As to Petitioner's claim that trial counsel failed to interview and call alibi witnesses, the Court of Appeals concluded that counsel had not been ineffective, as none of the alibi witnesses could account for Petitioner's whereabouts on the date of McCaleb's murder, and thus could not provide Petitioner a viable alibi. The Court of Appeals further concluded that Petitioner could not show that he had been prejudiced by the absence of alibi witnesses' testimony, given the overwhelming evidence of his guilt which included four eyewitnesses who had identified him as the shooter.

In July 2013, Petitioner filed his § 2254 petition, raising nine grounds for relief:

(1) The trial court abused its discretion in overruling trial counsel's Batson challenge;

(2) Trial counsel was ineffective by erroneously advising Petitioner that his criminal record would be read to the jury if he were to testify in his own defense at trial, and direct-appeal counsel was ineffective by failing to raise this claim;

(3) Trial counsel was ineffective by failing to investigate and present an alternative theory of the crime, and direct-appeal counsel was ineffective for failing to raise this claim;

(4) Trial counsel was ineffective by failing to investigate and call alibi witnesses at trial, and direct-appeal counsel was ineffective by failing to raise this claim;

(5) Trial counsel was ineffective by failing to call expert witnesses to testify at trial regarding forensic evidence, and direct-appeal counsel was ineffective by failing to raise this claim;

(6) The trial court abused its discretion by allowing perjured testimony from four state witnesses, trial counsel was ineffective by failing to object to the perjured testimony, and direct-appeal counsel was ineffective by failing to raise the issue;

(7) The prosecutor engaged in misconduct by knowingly eliciting the perjured testimony, and trial counsel and direct-appeal counsel were ineffective by failing to raise the issue;

(8) The prosecutor engaged in misconduct by inflaming the passions of the jury to convict Petitioner in order to protect the community and deter future crime, the trial court erred by allowing the misconduct, and trial and direct-appeal counsel were ineffective by failing to raise this issue; and

(9) Trial counsel was ineffective by failing to use, in a motion for a new trial, newly-discovered exculpatory evidence supplied by the victim's daughter, and direct-appeal and motion counsel were also ineffective by failing to rely on the new evidence in his state post-conviction proceedings ("newly-discovered evidence claim").

(Docs. 1, 4).

## II. Analysis

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "'A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . .

and nevertheless arrives at a [different] result.'" Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

### A. Ground 1: Petitioner's Batson Challenge

Petitioner argues that his right to equal protection was violated when the prosecution exercised a peremptory strike against an African-American venireperson. Trial counsel objected to two strikes of African-American venirepersons, claiming that they were motivated by the prospective jurors' race and that they thus violated Batson. The prosecution then offered a race-neutral reason for the strikes, the venirepersons' youth; withdrew one of the challenged strikes after the trial court clarified that the venireperson's apparent disability would not inhibit his ability to participate as a juror; and struck a young, Caucasian venireperson instead. Trial counsel

noted that the prosecution had not struck another young, Caucasian venireperson, and the prosecutor then explained that it would be impossible to strike every young venireperson. The trial court overruled Petitioner's objection.

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." Batson, 476 U.S. at 89. In evaluating Batson objections, trial courts are guided by a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Miller-El v. Cockrell, 537 U.S. 322, 328-29 (2003) (citations omitted). "[T]he denial of a Batson challenge is itself a finding at the third step that the defendant failed to carry his burden of establishing that the strike was motivated by purposeful discrimination." Smulls v. Roper, 535 F.3d 853, 863 (8th Cir. 2008) (en banc). The Court concludes that the Missouri Court of Appeals' rejection of Petitioner's Batson claim was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254. Even if the Court were to assume that Petitioner made a prima facie showing that the prosecutor exercised a peremptory challenge to strike the African-American venireperson on the basis of her race, the Court would nevertheless conclude that the Court of Appeals reasonably concluded that the prosecution offered a race-neutral basis for the strike—her youth—as nothing in the record suggests that the proffered basis was pretextual. Luckett v. Kemna, 203 F.3d 1052, 1054-55 (8th Cir. 2000) (age is a race-neutral reason for peremptory strikes). To the contrary, the record appears to support the prosecutor's proffered reason for the peremptory strikes, as the prosecutor withdrew one of the challenged strikes and instead struck a young, Caucasian venireperson. See United States v.

Dawn, 897 F.2d 1444, 1447-49 (8th Cir. 1999) (petitioner failed to make prima facie showing of Batson violation where prosecutor used six of seven peremptory challenges to exclude African-American venirepersons, prosecutor offered race-neutral reasons for the strikes, and defendant failed to present any other evidence of racial discrimination). Accordingly, the Petitioner's Batson claim will be denied.

### B. Ground 4: Failure to Call Alibi Witnesses

#### 1. Ineffective Assistance of Trial Counsel

Petitioner asserts that trial counsel provided him ineffective assistance by failing to call the alibi witnesses to testify at his trial. To state a claim of ineffective assistance of trial counsel, Petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. Id. To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Federal habeas review of a Strickland claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). There is a strong presumption that counsel's "challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 687 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

The Court concludes that the Missouri Court of Appeals' denial of his alibi-witness claim was not contrary to, or an unreasonable application of, clearly established federal law. See 28

U.S.C. § 2254. More specifically, the Court agrees with the Court of Appeals' conclusion that Petitioner did not show that he was prejudiced by counsel's failure to call the alibi witnesses because none of the witnesses could account for his whereabouts on the date of McCaleb's murder. Petitioner's amended Rule 29.15 motion stated that three witnesses had been available to testify on his behalf. First, his petition claimed that Rosie Sims would have testified that Petitioner went to Indiana "at the very beginning of October 2008, around October 1 or 2, 2008"; that he was in Indiana to celebrate a family birthday during the second week of October 2008; that he stayed in Indiana for "six-to-seven months"; and that they visited "frequently." Second, the motion asserted that Tasha Holder, Petitioner's niece, would have testified that Petitioner was in Indiana during the first week of October and that he "stayed for several months." Finally, Petitioner's amended Rule 29.15 motion alleged that Lenn Ivy, Sr., Petitioner's father, would have testified that Petitioner must have been in Indiana in "early October 2008" because he spoke with Petitioner on his mother's Indiana home telephone during that time. Notably, Petitioner's amended Rule 29.15 petition did not allege that any of the proposed alibi witnesses had first-hand knowledge of Petitioner's whereabouts on October 9, 2008, the date of McCaleb's murder. Rather, it claimed only that the witnesses were generally aware that Petitioner had travelled to Indiana, and had been there for some period of time in October 2008. As such, even if they had testified at trial, none of the alibi witnesses could provide Petitioner a viable alibi for the specific date and time of McCaleb's murder. Kennell v. Dormire, 2016 WL 1275482, at *18 (E.D. Mo. Mar. 31, 2016) (rejecting claim that trial counsel was ineffective by failing to investigate, interview, and present testimony of alibi witness where, inter alia, alibi witness could not account for petitioner's whereabouts during time the crime was committed).

The Court further agrees with the Court of Appeals' conclusion that Petitioner did not

show that he was prejudiced by the absence of alibi-witness testimony, in light of the overwhelming evidence of his guilt, which included video footage of the crime, testimony of four eyewitnesses who identified Petitioner as McCaleb's shooter, and Petitioner's own statement placing himself at the scene of the crime. In short, Petitioner did not establish that he was prejudiced by the absence of the proposed testimony of the alibi witnesses. Strickland, 466 U.S. at 687-94. The Court will thus deny Petitioner's claim that trial counsel was ineffective by failing to call the alibi witnesses.

### 2. Ineffective Assistance of Direct Appeal Counsel

Petitioner asserts that direct-appeal counsel was ineffective by failing to raise, on direct appeal, his claim that trial counsel was ineffective by failing to call the alibi witnesses. The Court concludes that direct-appeal was not ineffective by not raising Petitioner's claims of ineffective assistance of trial counsel because, in Missouri, claims of ineffective assistance of trial counsel are not cognizable on direct appeal. Mo. Sup. Ct. R. 29.15; Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Missouri law does not allow a claim for ineffective assistance of counsel to be raised on direct appeal"). Counsel cannot be ineffective by failing to raise nonviable claims. Strickland, 466 U.S. at 687-94 (requiring habeas petitioner to show that he was prejudiced by counsel's representation).

### C. Procedural Issues

Petitioner's remaining claims are procedurally defaulted. A district court is generally barred from considering a habeas petitioner's procedurally defaulted claims absent a showing of cause for the default and resulting prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Before seeking habeas relief, a petitioner is required to bring his claims through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is

designed to give the State courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also 28 U.S.C. § 2254(c). Federal habeas review of a claim is barred where a prisoner has defaulted his federal claims in a state court proceeding pursuant to an independent and adequate state procedural rule. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Under Missouri procedural rules, claims which are raised in pro se Rule 29.15 motions, but which are not raised or attached to an amended motion, are deemed abandoned. Reynolds v. State, 994 S.W.2d 944, 945-46 (Mo. 1999). Also, in Missouri, claims of ineffective assistance of trial counsel must be raised in post-conviction relief motions, and are not cognizable on direct appeal. Mo. Sup. Ct. R. 29.15; Arnold, 675 F.3d at 1087. This rule is clearly established and regularly followed. Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995). Petitioner did not raise his remaining claims in his amended Rule 29.l5 motion, and they are thus procedurally defaulted. Federal courts may excuse procedural default of a petitioner's claims, if the petitioner shows either (1) legally sufficient cause for the default and actual prejudice resulting from it; or (2) that failure to review the defaulted claim would result in a fundamental miscarriage of justice. Id. at 750. To establish the "cause" requirement, a habeas petitioner must show that an external impediment prevented him from presenting his defaulted claim to the state court. Id. at 753.

Petitioner first argues that he should be relieved of his default of his newly-discovered evidence claim because motion counsel was ineffective by omitting it from his amended Rule 29.15 motion. Ineffective assistance of motion counsel can establish "cause" to excuse procedural default. Martinez v. Ryan, 133 S. Ct. 1309, 1320 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial

claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). To establish cause to overcome his default of his newly-discovered evidence claim based on ineffective assistance of motion counsel, Petitioner must show "(1) that post-conviction counsel was 'ineffective under the standards of [Strickland], and (2) 'that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [Petitioner] must demonstrate that the claim has some merit.'" Graves v. Cassady, 2015 WL 5560356, at *8 (E.D. Mo. Sept. 21, 2015) (quoting Martinez, 133 S. Ct. at 1318).

The Court concludes that Petitioner has not established cause for the procedural default of his newly-discovered evidence claim, as he cannot show that he was prejudiced by counsel's omission of the claim from his amended Rule 29.15 motion. Martinez, 133 S. Ct. at 1318 (petitioner must show that he was prejudiced by motion counsel's deficient representation); McLaughlin v. Steele, 2016 WL 1106884, at *9 (E.D. Mo. Mar. 22, 2016)) (prejudice under Martinez and prejudice under Strickland may be separate inquiries, but they overlap, and may be redundant in some cases). More specifically, Petitioner cannot establish that his newly-discovered evidence claim was substantial. Dansby v. Hobbs, 766 F.3d 809, 834 (8th Cir. 2014) (to establish "cause" to excuse procedural default under Martinez, a petitioner must show that his defaulted claim was "substantial" or "potentially meritorious"). In order to be entitled to a new trial, a criminal defendant in Missouri must show that (1) he first learned of the evidence after the trial; (2) that the delay in his discovery of the evidence was not the result of his own lack of due diligence; (3) the evidence is so material that it would probably produce a different result in a new trial; and (4) the evidence is not merely cumulative or impeaching of other witnesses. State v. Williams, 652 S.W.2d 103, 114 (Mo. 1983). Petitioner attached to his § 2254 petition a

document which appears to show that, shortly after Petitioner's trial, McCaleb's daughter informed trial counsel that she had reason to believe McCaleb's son had actually committed the murder, and that he had killed his father instead of "turning on him" because he was "in trouble with the Feds." The document also indicates that McCaleb's daughter told trial counsel that she was afraid of her family; that she "wanted to see the right guy locked up"; that she would only cooperate if she could remain anonymous; and that if an investigator from trial counsel's office were to contact her, she would not speak with the investigator (Doc. 4 at 23-24). The Court notes that Petitioner has not explained why this witness—a family member of the victim—was not discovered, or could not have been discovered with due diligence, prior to his trial. Moreover, the documents do not reveal any facts—beyond her belief that her brother was in trouble with federal authorities—on which the witness had based her opinion that her brother had committed the crime. Under these facts and given the overwhelming evidence of Petitioner's guilt, the Court concludes that there is no reasonable probability that Petitioner would have been granted a new trial had counsel so moved, or that he would have been acquitted had Petitioner been granted a new trial at which McCaleb's daughter would testify. See McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996) (criminal defendant is not prejudiced by counsel's failure to call a witness if, factoring in the uncalled witness's testimony, the government's case remains overwhelming; rejecting §2254 claim of ineffective assistance of counsel based on counsel's failure to call witnesses where petitioner failed to show reasonable probability that the outcome of his trial would have been different had the witnesses testified). Petitioner has thus failed to show that motion counsel was ineffective by failing to raise his newly-discovered evidence claim, as the claim was not substantial. Martinez, 133 S. Ct. at 1318.

In his reply, Petitioner additionally argues that he is actually innocent of McCaleb's

document which appears to show that, shortly after Petitioner's trial, McCaleb's daughter informed trial counsel that she had reason to believe McCaleb's son had actually committed the murder, and that he had killed his father instead of "turning on him" because he was "in trouble with the Feds." The document also indicates that McCaleb's daughter told trial counsel that she was afraid of her family; that she "wanted to see the right guy locked up"; that she would only cooperate if she could remain anonymous; and that if an investigator from trial counsel's office were to contact her, she would not speak with the investigator (Doc. 4 at 23-24). The Court notes that Petitioner has not explained why this witness—a family member of the victim—was not discovered, or could not have been discovered with due diligence, prior to his trial. Moreover, the documents do not reveal any facts—beyond her belief that her brother was in trouble with federal authorities—on which the witness had based her opinion that her brother had committed the crime. Under these facts and given the overwhelming evidence of Petitioner's guilt, the Court concludes that there is no reasonable probability that Petitioner would have been granted a new trial had counsel so moved, or that he would have been acquitted had Petitioner been granted a new trial at which McCaleb's daughter would testify. See McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996) (criminal defendant is not prejudiced by counsel's failure to call a witness if, factoring in the uncalled witness's testimony, the government's case remains overwhelming; rejecting §2254 claim of ineffective assistance of counsel based on counsel's failure to call witnesses where petitioner failed to show reasonable probability that the outcome of his trial would have been different had the witnesses testified). Petitioner has thus failed to show that motion counsel was ineffective by failing to raise his newly-discovered evidence claim, as the claim was not substantial. Martinez, 133 S. Ct. at 1318.

In his reply, Petitioner additionally argues that he is actually innocent of McCaleb's

murder and that the Court should excuse the procedural default of his newly-discovered evidence claim pursuant to the manifest-injustice exception. In order to be relieved of procedural default based on a claim of actual innocence, a petitioner must show by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty. See Sawyer v. Whitley, 505 U.S. 333, 334-35 (1992). As discussed more fully above, in light of the overwhelming evidence of guilt, Petitioner has not shown a reasonable probability that he would be acquitted at a retrial at which McCaleb's daughter might testify. Thus, Petitioner has failed to show that he is entitled to relief from the procedural default of his newly-discovered evidence claim based on actual innocence. In sum, Petitioner's remaining claims are procedurally defaulted, and he has not shown cause for their default. The Court is thus barred from considering them on their merits. Coleman, 501 U.S. at 750.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Lenn A. Ivy's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 4) is **DENIED.**

**IT IS FURTHER ORDERED** that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). A judgment dismissing this case is filed herewith.

Dated this 26th day of September, 2016.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**